**Marian John SZMALEC, Appellant,**

v.

**Joseph MADRO, Appellee.**

**No. A14–82–079CV.**

Court of Appeals of Texas,
Houston (14 Dist.).

March 17, 1983.
Rehearing Denied April 20, 1983.

Harriet Hubacker, Houston, for appellant.

Alice Giessel, Talbert, Giessel & Stone, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and DRAUGHN and ELLIS, JJ.

## OPINION

ELLIS, Justice.

This is an appeal from a take nothing judgment rendered in a personal injury action arising from an automobile accident. Trial to a jury resulted in the finding that appellant had suffered no damages as a result of the accident made the basis of this suit. [Appellant did not sue for property damage to his automobile.] We affirm.

The collision made the basis of this suit occurred on Friday, December 6, 1974. As appellant was driving south on a major thoroughfare in Houston, Texas, his left rear bumper interlocked momentarily with appellee's right bumper. Appellant's car subsequently came to a stop approximately 50 to 60 feet beyond the point of impact. Appellee's automobile was not damaged, whereas appellant's vehicle suffered some damage, but was operable. Appellant complained of no injuries at the scene, and none were apparent; in fact, approximately ten minutes after the accident, appellant drove to work. In his deposition, appellant stated that he had chosen not to call the police because he needed to get to work. Appellant did not seek medical attention until the following Monday, December 9.

Appellant, by points of error five and six, complains that the jury finding of no damages is against the great weight and preponderance of the evidence because the evidence is uncontroverted that some damages did result from the accident.

With respect to the fact of injury, the record reveals that the complaints of appellant were subjective in nature. On Monday following the accident, appellant went to Dr. Pulse, a chiropractor, complaining of a stiff neck and pain in his lower back. He was ultimately treated approximately forty times by Dr. Pulse. Dr. Pulse, however, did not testify at trial. Appellant's complaints continued, and in mid-January, 1975, he quit work.

Appellant was unable to testify at trial due to his deteriorated condition, but his deposition was read to the jury. He stated that as a result of the accident, he suffered pain and stiffness in his neck that lasted about six months, as well as back pain which had left him stiff, uncomfortable, and weak. Appellant also complained of severe insomnia, but admitted that he had been treated for this prior to the accident.

Dr. Alexander Brodsky, an orthopedic surgeon, testified by deposition that he examined appellant in August of 1978, and at that time, took a history from him. Appellant complained of constant low back pain and numbness from the knees down. Appellant's wife informed Dr. Brodsky that appellant had been under psychiatric care for about twelve years, and that he had been diagnosed as schizophrenic, with a major symptom being insomnia. Other than some loss of lordotic curve, which could be normal for appellant, Dr. Brodsky's exami-

nation resulted in negative findings. X-rays showed some mild to moderate spurring in the lower vertebrae which was caused by "wear and tear." Other tests conducted, including a myelogram, also revealed no significant problems. When asked to diagnose the condition of appellant's back, Dr. Brodsky said that, based upon the appellant's *subjective* complaints and history, he assumed he had sustained a sprain. This assumption was based on an "exclusion diagnosis" or "benefit of a doubt diagnosis" because a sprain cannot be seen. His second diagnosis was pre-existing degenerative disc disease. Dr. Brodsky also stated that he felt there was tremendous functional overlay associated with the pain suffered by appellant. He described "functional overlay" as a term used when some type of psychological factor is present which either causes, perpetuates, or aggravates the symptoms. When asked if, in his opinion, based on reasonable medical probability, the condition of appellant was caused in whole or in part by the auto accident in December of 1974, Dr. Brodsky stated that if the history of the injury was correct, and if there were no other conditions or events of which he was not aware, the injury was, in part, responsible for the initiation of his symptoms and their existence.

Appellant next introduced the deposition of Dr. Kinross-Wright, a psychiatrist, who first treated appellant in 1963 and then saw him again in August, 1978. On the latter date, Dr. Kinross-Wright took a history from appellant relating to events prior and subsequent to the accident. Appellant told Dr. Kinross-Wright that following the accident in 1974, he had a great deal of pain in his neck and back, had been unable to sleep, and had great difficulty in working. His history also revealed that appellant had been under treatment for tuberculosis for a couple of years.

When Dr. Kinross-Wright saw him, appellant was having extreme difficulty in sleeping, and was depressed, restless and agitated. Dr. Kinross-Wright made a diagnosis of neurotic depression based upon his clinical examination, and in March of 1979, admitted appellant to a psychiatric clinic for treatment. At the clinic, appellant was not treated for any orthopedic problem, but a physical exam done at that time revealed no significant features. Dr. Kinross-Wright stated that based on reasonable medical probability, in his professional opinion, appellant's mental responses to the injuries sustained in the accident in 1974 were a proximate cause of his depressive neurosis. He noted that his treatment of appellant was related to mental and emotional injuries and not to any physical injuries. This diagnosis was based on both appellant's and his wife's personal account of the automobile accident and appellant's condition prior and subsequent to the accident, not from the doctor's personal knowledge. On cross-examination, Dr. Kinross-Wright confirmed the fact that medical records of appellant's psychiatric treatment prior to 1974 indicated that appellant had complaints of insomnia and pain from bodily injury sustained in an automobile accident in 1960. He also stated that appellant's psychiatric treatment records indicated that he had exhibited signs of depression before December, 1974.

John Gray Andrew, an orthopedic surgeon, was called as an expert witness for appellee. Dr. Andrew examined appellant in October of 1977. He stated that most of his physical exam was negative, although x-rays did show some degenerative changes between his vertebrae due to wear and tear resulting from his age. There was no evidence of fracture, dislocation or abnormality in the spinal area. Based on his x-ray study, the doctor stated he felt that none of the results on the x-rays were at all related to the 1974 accident. He also stated there was no evidence to suggest there was any aggravation as a result of the accident. He testified that he did not believe appellant was being truthful about his symptoms because some of his responses were inconsistent. He said he could not positively say that no injury occurred, but if there were an injury, it was not severe at the time it occurred.

Dr. James Claghorn, a psychiatrist, was also called as an expert witness for appel-

lee. Dr. Claghorn testified that his review of the records indicated appellant was never schizophrenic; in fact, from at least 1963 on, appellant had suffered from depression. Dr. Claghorn noted the records also reflected that prior to December, 1974, appellant was bothered by physical complaints, including back pain. He stated that, in his professional opinion, the accident which occurred in December, 1974 did not aggravate in any way the symptoms appellant had exhibited for eleven years prior to the accident. Dr. Claghorn stated that the illness for which appellant was treated in 1963 went through a steady and damaging course through the years, and that it had no basis in any injury. Additionally, he said that in his opinion, the accident had no effect whatsoever in aggravating any pre-existing depressive condition appellant had, nor did it create any new illness or disease that he did not have before the accident.

In arriving at the conclusion that appellant suffered no damages as a result of the accident, the jury may well have considered that whatever disabilities appellant had were not reasonably and proximately caused by the collision. There was no proof of any objective manifestation of physical injury to appellant. All of his symptoms were dependent upon his verbal description of "subjective" conditions, i.e. stiffness, low back pain, numbness, insomnia.

■ Appellant cites a number of cases to support his contention that, although a jury has considerable discretion in assessing damages in a personal injury case, a finding of no damages is clearly against the weight and preponderance of the evidence where injury is shown, even though it be a minor injury. We are in agreement with the proposition that, when there are substantially undisputed objective symptoms of injury, a jury cannot ignore the undisputed facts and arbitrarily deny any recovery. *Dupree v. Blackmon,* 481 S.W.2d 216 (Tex. Civ.App.—Beaumont 1972, writ ref'd n.r.e.); *Horn v. State Farm Ins. Co.,* 567 S.W.2d 266 (Tex.Civ.App.—Tyler 1978, no writ); *Sansom v. Pizza Hut of East Texas, Inc.,* 617 S.W.2d 288 (Tex.Civ.App.—Tyler 1981, no writ).

When, however, a party alleges injuries which are primarily of a "subjective" nature, and there is no directly observable or "objective" evidence that an injury has occurred, a fact issue is created which must be determined solely by the jury. It is exclusively within the province of the jury to determine the credibility of any of the witnesses and the weight to be given their testimony *See Royal v. Cameron,* 382 S.W.2d 335 (Tex.Civ.App.—Tyler 1964, writ ref'd n.r.e.); *Hulsey v. Drake,* 457 S.W.2d 453 (Tex.Civ.App.—Austin 1970, writ ref'd n.r.e.); *Middleton v. Palmer,* 601 S.W.2d 759 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r. e.); *Jackson v. Killough,* 615 S.W.2d 274 (Tex.Civ.App.—Dallas 1981, no writ).

■ In the case at bar, there was no objective evidence of injury to appellant as a result of the accident in December, 1974. Thus, the jury was entitled to judge the credibility and weight of the opinion evidence of the four doctors who testified. It is apparent the jury chose to believe that appellant's present condition was not a result of the accident.

In point of error seven, appellant alleges that the Court erred in not granting him a new trial because the jury's finding of no damages is so grossly biased that it indicates jury misconduct. In light of our findings in points five and six, we overrule this complaint.

■ In points of error one through four, appellant claims that the trial court erred in submitting issues on contributory negligence. Specifically, he argues the evidence is insufficient to support the jury's finding that he was fifty percent negligent, and that such finding is against the great weight and preponderance of the evidence. Even if the submission of issues concerning alleged negligence by appellant and the subsequent jury findings were error, which we do not decide, it would be harmless in light of the jury's finding of no damages. Thus, under Tex.R.Civ.P. 434, it would not be grounds for a new trial. *See Southern Pine Lumber Co. v. Andrade,* 132 Tex. 372, 124 S.W.2d 334 (Tex.1939); *Lewis v. Isthmian Lines, Inc.,* 425 S.W.2d 893 (Tex.Civ.App. —Houston [14th] 1968, no writ).

In point of error eight, appellant argues the court erred in refusing his requested instruction regarding aggravation of appellant's injuries. Special issue No. 3 defined the term "injuries" to include:

[S]uch complications naturally resulting from such damages or harm, and the incitement, acceleration or *aggravation of any previously existing disease, infirmity, or condition previously or subsequently existing by reason of such damage or harm.* (Emphasis added.)

Appellant claims the instruction should have read:

The Plaintiff was not responsible for the errors or mistakes of the physician in treating the injuries received providing (s)he exercises ordinary care in procuring the services of such physician.

Tender of a requested instruction is not necessary when the complaint is that the instruction already appearing in the charge is defective. *Lyles v. Texas Employers' Insurance Association,* 405 S.W.2d 725 (Tex.Civ.App.—Waco 1966, writ ref'd n.r.e.); *Citizens National Bank of Breckenridge v. Allen,* 575 S.W.2d 654 (Tex.Civ.App.—Eastland 1978, writ ref'd n.r.e.). However, such a request is necessary when the objection to a definition actually seeks to have the court give additional instructions or definitions. *State v. Harrington,* 407 S.W.2d 467 (Tex.1966), *cert. denied,* 386 U.S. 944, 87 S.Ct. 977, 17 L.Ed.2d 874 (1967); *Lyles v. Texas Employers Insurance Association, supra.* We believe the latter rule is applicable to appellant's complaint. At trial, appellant's attorney objected to the *inclusion* of the instruction given concerning aggravation of injury. No complaint is made on appeal as to the inclusion of the instruction. Rather, appellant is asserting that the specific instruction set out above should have been given. We find nothing in the record to indicate that any such request for instruction was made. Therefore, appellant's point has not been properly preserved for review. We overrule point of error eight.

In point of error nine, appellant contends that the trial court erred in excluding certain deposition testimony of Dr. Kinross-Wright because the answer was unresponsive. We disagree. At the time the deposition was taken, it was agreed that any objections to the responsiveness of an answer were to be made at the time of taking, or they would be waived. Appellee's attorney, at the time of the deposition, did object to the testimony in question as being unresponsive. Tex.R.Civ.P. 214 provides:

If any deposition shall contain any testimony not pertinent to the direct and cross-question propounded, such matter shall be deemed surplusage, and may be stricken out by the court upon objection thereto.

In light of the fact a proper objection was made at the time the deposition was taken, providing a subsequent opportunity for appellant to elicit a proper response from the witness, we hold the trial court did not err in sustaining appellee's objection to reading such testimony at trial. We overrule appellant's ninth point of error.

Appellant contends in his tenth point of error that the trial court erred in overruling his motion for new trial because the cumulative effect of the errors alleged reasonably could and probably did result in the rendition of an improper judgment. We have reviewed appellant's points, and find no error; thus, we must also overrule this final complaint of appellant.

The judgment is affirmed.