McDougal 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN



 




NO. 3-93-038-CV




GERALD W. McDOUGAL,



 APPELLANT


vs.





ROBINSON, STARNES, ANGENEND & MASHBURN,


AND JAMES R. MEYERS,



 APPELLEES


 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT



NO. 439,288, HONORABLE WILLIAM C. BLACK, JUDGE PRESIDING



 




 This is an attorney malpractice case. Appellant, Dr. Gerald W. McDougal, hired
appellee, James R. Meyers, to draft a prenuptial agreement. In the subsequent divorce suit, the
agreement was held to be unenforceable. McDougal then brought this legal malpractice suit
against Meyers and his former law firm, appellee Robinson, Starnes, Angenend & Mashburn. 
At trial, all jury findings were favorable to the appellees. McDougal raises two points of error,
solely challenging evidentiary rulings made by the trial court. We will affirm the judgment of the
district court.



THE CONTROVERSY


 The alleged malpractice involved Meyers' drafting of a prenuptial agreement for
McDougal, and Meyers' advice to McDougal on the agreement's effect. McDougal retained
Meyers in January of 1979 to draft the prenuptial agreement in anticipation of his marriage to Lois
Tatum on February 24, 1979. McDougal expressed to Meyers his desire that the agreement
insure that his separate property, income from separate property, profit sharing, and retirement
programs remain his separate property. McDougal wished to avoid the type of drawn out
property dispute that he had experienced during the divorce following his previous marriage.

 Meyers prepared a prenuptial agreement and presented it to McDougal on February
22, 1979. The agreement provided, among other things:



[T]o the extent permitted by the constitution of the State of Texas, [the parties]
shall separately retain all rights in his or her own property whether now owned or
hereafter acquired and each of them shall have the absolute and unrestricted right
to dispose of such property free from any claim that may be made by the other by
reason of their marriage and with the same effect as if no marriage had been
consummated between them.



There is conflicting evidence in the record concerning the discussions between McDougal and
Meyers concerning the effect of the prenuptial agreement. McDougal testified at trial that Meyers
told him the agreement would insure that all property acquired by him during marriage, including
his salary, would be treated as his separate property. Meyers testified at trial that the agreement
was not designed to make McDougal's salary his separate property, and that he so advised
McDougal. McDougal and his fiance signed the agreement on their marriage day, February 24,
1979.

 Eight years later, McDougal filed for divorce. McDougal contended that under the
prenuptial agreement, his wife was entitled to only $5,000, representing her share of the
community estate. Lois McDougal counterclaimed for divorce, raising issues of fault in the
breakup of the marriage, cruel treatment, co-mingling of community and separate property,
valuation of assets, character of property, and reimbursement of the community estate for payment
of separate debts.

 The trial judge in the divorce proceeding ruled that the prenuptial agreement was
unenforceable. (1) After several hearings, the trial court ordered a fifty-fifty split of the community
estate. Following the advice of his attorney in the divorce proceedings, McDougal did not appeal
the divorce judgment. There is conflicting evidence in the record on whether the trial court's
property division would have been different had the prenuptial agreement been enforced. 

 Following the divorce, McDougal sued Meyers and his former law firm for
negligence, seeking to recover monetary damages sustained as a result of the unenforceability of
the prenuptial agreement. In addition, McDougal alleged that Meyers' conduct amounted to
breach of contract, breach of fiduciary duty, gross negligence, and a violation of the Deceptive
Trade Practices-Consumer Protection Act. Tex. Bus. & Com. Code Ann. § 17.41 et seq. (West
1987 & Supp. 1994).

 During the malpractice suit, two evidentiary issues were hotly contested. First,
McDougal unsuccessfully sought to admit evidence to show that Meyers was suffering from
alcoholism when he drafted the prenuptial agreement. McDougal sought admission of medical
records of Meyers' alcohol-related treatments, and testimony of Caren Phelan, a licensed
psychologist, on the effect that Meyers' alcohol problems would have had on his ability to practice
law. Phelan's opinion testimony was based on her review of Meyers' medical records and the
deposition testimony of several witnesses in the case. Second, McDougal unsuccessfully sought
to bar admission of evidence of his marital misconduct that had been admitted in his divorce suit.

 The jury rejected all of McDougal's claims against Meyers. Furthermore, in
response to questions five and six which dealt with McDougal's damage claims, the jury failed
to find that McDougal had suffered any damages. Neither damage question was submitted
conditionally on a finding of liability, and McDougal does not challenge the jury's failure to find
liability or damages on this appeal. In his two points of error, McDougal solely challenges the
district court's evidentiary rulings excluding evidence of Meyers' alcohol problems and admitting
evidence of McDougal's marital misconduct.



DISCUSSION


 To obtain a reversal of a judgment based upon error of the trial court in admission
or exclusion of evidence, the appellant must show: (1) that the trial court did in fact commit
error; and (2) that the error was reasonably calculated to cause and probably did cause rendition
of an improper judgment. Gee v. Liberty Mut. Fire Ins. Co., 765 S.W.2d 394, 396 (Tex. 1989);
Bridges v. City of Richardson, 354 S.W.2d 366, 368 (Tex. 1962); see also Tex. R. App. P. 81(b).

 We are mindful of the deference that an appellate court must give to a trial court's
evidentiary rulings. "A great deal of discretion is vested in the trial judge in passing on the
admissibility of evidence." Luvual v. Henke & Pillot, 366 S.W.2d 831, 838 (Tex. Civ.
App.--Houston [1st Dist.] 1963, writ ref'd n.r.e.). Admission or exclusion of evidence during trial
is reviewed on appeal by using an abuse of discretion standard. Ethicon, Inc. v. Martinez, 835
S.W.2d 826, 831 (Tex. App.--Austin 1992, writ denied). A trial court abuses its discretion when
it acts in an unreasonable and arbitrary manner or without reference to any guiding principles. 
Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex. 1992); Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 241-42 (Tex. 1985).

 Furthermore, application of Rule 403 of the Texas Rules of Civil Evidence relies
upon the discretion of the trial judge. Rule 403 reads, "Although relevant, evidence may be
excluded if its probative value is substantially outweighed by the danger of unfair prejudice,
confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless
presentation of cumulative evidence." Tex. R. Civ. Evid. 403. Commentators have written the
following on Rule 403 of the Federal Rules of Evidence, upon which the Texas rule was based:



Rule 403 is an explicit grant of discretion to the trial judge. While the decision to
adopt the rule may represent a concession to the inevitability of discretion that
arises from flaws in the rules or weaknesses in appellate enforcement, Rule 403
also rests on the assumption that a degree of trial court discretion is desirable as
well as inevitable.



Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure § 5212, at 252
(1978). With this in mind, we turn to McDougal's evidentiary points of error.

 In his first point of error, McDougal contends that the trial court erred in
excluding evidence of Meyers' alcoholism. During discovery, McDougal learned that Meyers was
hospitalized for treatment of alcoholism in October 1979. Medical records indicated that Meyers
had a ten-year history of "black-outs" prior to his hospitalization. In her bill of exception
testimony, Caren Phelan, a licensed psychologist, reviewed Meyers' hospital records and stated
that in her opinion, given the extent of Meyers' alcoholism as reflected by the hospital records,
his ability to function at work would have been affected. She testified that she would "suspect that
someone with his history would be drinking," and while this did "not necessarily mean he'd be
drinking on the job," he would have been consuming alcohol on a daily basis. Phelan further
testified that she had "absolutely no idea" whether Meyers was intoxicated while performing legal
work for McDougal, and when asked whether Meyers' alcoholism would have been reflected in
the judicial decisions he made while serving as a district judge prior to 1979, Phelan answered,
"I have no way of knowing."

 Beyond Meyers' medical records and Dr. Phelan's testimony interpreting the
records, both tending to show a habit of intoxication, McDougal offered no direct evidence from
any witness who, in early 1979, had ever seen Meyers' legal work affected or impaired by alcohol
consumption. Even McDougal, when asked if Meyers had ever appeared to him to be under the
influence of alcohol, answered, "Not that I could tell."

 Under case law predating the adoption of the Texas Rules of Civil Evidence, the
general rule was that in a negligence suit, unless there was some evidence that a party was
intoxicated at the time of the actionable occurrence, evidence of past instances of intoxication or
habitual intoxication was inadmissible to establish negligence. Compton v. Jay, 389 S.W.2d 639,
642-43 (Tex. 1965); R.T. Herrin Petroleum Transp. Co. v. Proctor, 338 S.W.2d 422, 431-32
(Tex. 1960); McCarty v. Gappelberg, 273 S.W.2d 943, 947-48 (Tex. Civ. App.--Fort Worth
1954, writ ref'd n.r.e.). Given this pre-Rules case law, and the fact that there is no evidence in
the record indicating that Meyers was ever intoxicated while performing legal services for
McDougal, we cannot say that the trial court abused its discretion in excluding evidence of
Meyers' alcoholism. 

 In his second point of error, McDougal contends that the trial court erred by
admitting evidence relating to his conduct during his marriage and divorce. Specifically,
McDougal complains that the jury heard evidence that he allegedly made fraudulent transfers of
community property, physically and sexually abused his wife, and pressured his wife into having
an abortion. McDougal objected to all of this testimony.

 The legal malpractice claim that is the basis of this appeal involves a case within
a case. When the plaintiff in a malpractice suit was the unsuccessful party in the underlying case,
to prevail in the case-in-chief, the malpractice plaintiff must prove that the malpractice-defendant
attorney's negligence was a proximate cause of the unfavorable outcome in the underlying suit. 
Fireman's Fund Am. Ins. Co. v. Patterson & Lamberty, Inc., 528 S.W.2d 67, 69 (Tex. Civ.
App.--Tyler 1975, writ ref'd n.r.e.). To defend the malpractice suit, the defendant-attorney steps
into the shoes of the defendant in the underlying suit and may raise the same arguments raised by
the defendant to demonstrate that the plaintiff would have lost in the underlying suit, regardless
of any negligence on the part of the defendant-attorney. Gibson v. Johnson, 414 S.W.2d 235,
238-39 (Tex. Civ. App.--Tyler 1967, writ ref'd n.r.e.), cert. denied, 390 U.S. 946 (1968). 
Accordingly, any evidence that was relevant to the defense of the underlying suit is also relevant
to the defense of the malpractice claim. Id.

 To prevail in his malpractice suit, McDougal was required to prove that he would
have been awarded a greater share of the marital assets, but for any negligence on the part of
Meyers. In effecting a division of community property between former spouses in a divorce
proceeding, the judge shall make a division "in a manner that the court deems just and right." 
Tex. Fam. Code Ann. § 3.63 (West 1993). The trial court may consider fault in the breakup of
the marriage in arriving at a "just and right" division of the community estate in a divorce granted
on a fault basis. Murff v. Murff, 615 S.W.2d 696, 698 (Tex. 1981); Young v. Young, 609 S.W.2d
758, 760-62 (Tex. 1980).

 Because fault in the breakup of the marriage was a proper factor for the trial court
to have considered in McDougal's divorce suit and marital property division, it was also relevant
to his malpractice suit, which alleged that the unenforceability of the prenuptial agreement resulted
in an unfavorable division of the marital assets. Accordingly, because of its clear relevance, we
find that the trial court did not abuse its discretion by admitting evidence of McDougal's marital
misconduct.

 Furthermore, even if the two evidentiary rulings that McDougal complains of did
constitute abuses of discretion, any error was harmless given that McDougal does not challenge
the jury's failure to find that he suffered any damages. Question number five asked what amount
of money would compensate McDougal for the difference, if any, in the portion of the marital
estate that he would have received if the prenuptial agreement had been enforced. Question six
asked what amount of money would compensate McDougal for the expenses he incurred in the
divorce proceeding that he would not have incurred had the prenuptial agreement been enforced. 
The jury considered both questions, since the submission of neither was conditioned on a finding
of liability, and failed to find that McDougal had sustained any damages. McDougal raises no
challenge to the jury's failure to find on appeal. Therefore, given that the failure to find any
damages remains unchallenged, any errors relating to liability, including erroneous evidentiary
rulings, are rendered harmless. Glockzin v. Rhea, 760 S.W.2d 665, 668 (Tex. App.--Houston [1st
Dist.] 1988, writ denied); Szmalec v. Madro, 650 S.W.2d 514, 517 (Tex. App.--Houston [14th
Dist.] 1983, writ ref'd n.r.e.); Lewis v. Isthmian Lines, Inc., 425 S.W.2d 893, 894-95 (Tex. Civ.
App.--Houston [14th Dist.] 1968, no writ).



CONCLUSION


 Finding no harmful error, McDougal's points of error are overruled, and the
judgment of the trial court is affirmed.



 

 Mack Kidd, Justice 

Before Justices Powers, Jones and Kidd

Affirmed

Filed: February 16, 1994

Do Not Publish

1.   The trial judge held the agreement unenforceable because McDougal had failed to
prove by clear and convincing evidence that both he and Lois McDougal had entered into
the agreement with "informed consent." While no informed consent requirement existed
at the time Meyers drafted the prenuptial agreement, a statute requiring informed
consent was enacted in 1981. See Act of May 22, 1981, 67th Leg., R.S., ch. 782, § 2, 1981
Tex. Gen. Laws 2964, 2965 (Tex. Fam. Code Ann. § 5.45, since repealed) ("The proponent
of the agreement . . . has the burden to prove by clear and convincing evidence that the party
against whom enforcement of the agreement is sought gave informed consent . . . ."). 
Ironically, about six months after the McDougals' divorce, the informed consent requirement
was abolished. See Act of June 1, 1987, 70th Leg., R.S., ch. 678, § 1, 1987 Tex. Gen. Laws
2530, 2530 (Tex. Fam. Code Ann. § 5.45, since amended).