**Reversed and Remanded and Majority and Dissenting Opinions filed July 12, 2022.**



In The

# Fourteenth Court of Appeals

### NO. 14-20-00348-CV

### JAQUELIA TYCHELLE JEFFERSON, Appellant

### V.

### SONIA PARRA, Appellee

**On Appeal from the 190th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2018-14320**

## OPINION

Appellee Sonia Parra filed suit against appellant Jaquelia Tychelle Jefferson for damages Parra sustained in a motor vehicle collision. The jury found Jefferson negligent but awarded zero damages. The trial court granted Parra's motion for judgment notwithstanding the verdict (JNOV) and awarded Parra $25,740 in medical expenses. In a single issue, Jefferson argues that the trial court erred in granting Parra's motion for JNOV. Parra asks us to sanction Jefferson for bringing

a frivolous appeal. We reverse the trial court's JNOV, remand for a new trial, and deny Parra's request for sanctions.

## I. BACKGROUND

On March 22, 2016, Parra and Jefferson were involved in a motor vehicle accident when Jefferson's vehicle struck the back of Parra's vehicle. Parra filed suit against Jefferson in March 2018, alleging that Jefferson operated her vehicle in a negligent manner, causing Parra injuries and damages.

The case proceeded to a jury trial on March 4, 2020. Parra testified she had been stopped at a red light for approximately twenty seconds when Jefferson hit the back of her vehicle. Jefferson disputed that Parra was stopped; instead, Jefferson insisted that she "rolled forward" when Parra moved forward. According to her statement in the police report, Jefferson told the HPD officer, "She slammed on her [brakes] kinda fast and I hit her." Parra told the police: "Car was at a complete stop in front of me. I made my stop as well. The light was red. A Chevy Camaro hit me from the back. I got off [sic] to confront her and she apologized, and admitted that she was distracted looking down."

Parra testified that she did not feel pain immediately after the accident, but several hours after the accident, she began experiencing pain in her arm, neck, and lower back.

Two days after the collision, Parra went to a chiropractor because she was in pain. Parra testified that the chiropractic treatment helped temporarily, but then the pain would return several hours later. In May 2016, Parra was referred to undergo a cervical and lumbar MRI because of "persistent and radiating pain and to rule out disc pathology." The cervical spine MRI noted "C6-C7: Focal 1.5mm central disc protrusion (herniation) indents the thecal sac. Central canal and neural foramina

are patent." Parra's lumbar spine MRI documented the following findings:

> Broad-based 5.5 mm central disc protrusion (herniation) with a superimposed 8 mm posterior central annular fissure (high intensity zone). Disc protrusion indents the thecal sac. The intervertebral disc demonstrates decreased central hyperintensity with preservation of the disc height, suggesting an acute injury with leakage of central disc contents. Associated mild to moderate left and mild right neural foraminal stenosis. Central canal is patent.

Parra was then referred to see David Singleton, M.D., a pain management specialist, in July of 2016.

*Trial Testimony*

At trial, Dr. Singleton testified that the MRI results were consistent with his findings from the physical examination he conducted in July 2016 when he met with Parra. Additionally, Dr. Singleton asserted that these findings are consistent with "something that would be painful." Dr. Singleton was then asked to explain the results from the physical examinations in more detail:

| [Question]: | After that it indicates on the report, "The intervertebral disc demonstrates decreased central hyper-intensity with preservation of the disc height, suggesting an acute injury with leakage of central disc contents." Can you explain to me what that is? |
|---|---|
| [Dr. Singleton]: | Yes, sir. The—if one can envision a black and white picture like an MRI, things that are water—that have water contents, or the jelly portion of the doughnut, are very bright in appearance. So you don't exactly see a jelly doughnut with a rip. What you would notice on most MRIs is a bright white signal in the middle of the disc. The bright white would suggest that it's new and not old. Did that help explain? |

[Question]: And when you say new and not old. The word *acute* is specifically used in these records. Acute is something is new in—in time; is that correct?

[Dr. Singleton]: Yes, sir.

[Question]: Okay. So that's not something that is degenerative or preexisting for years, is it?

[Dr. Singleton]: It's unlikely.

Dr. Singleton next explained some of the physical examinations he performed on Parra, such as testing her range of motion and observing her gait as she walked, which was followed by this discussion:

[Question]: Did [the results from the physical examinations] correlate to the subjective complaints that she told you?

[Dr. Singleton]: Yes, sir.

[Question]: Okay. So there—there wasn't any exaggeration in her subjective complaints based on your objective findings, correct?

[Dr. Singleton]: There's no discrepancy, correct.

Dr. Singleton then testified concerning the source of Parra's injuries:

[Question]: Do you have any doubt that [Parra] was in good health in the days, weeks or month prior to the collision on March 22nd of 2016?

[Dr. Singleton]: I have no doubt.

[Question]: And in reasonable medical probability, were the injuries and the findings that—that were on the MRI results caused by the motor vehicle collision of March 22nd, 2016?

4

[Dr. Singleton]:    It is reasonable to assume that, yes, sir.

[Question]:         If [Parra] had been in a motor vehicle collision five years prior to the collision and underwent a course of treatment with full recovery, would that have been [of] any significance of you to know when you first saw her in July of 2016?

[Dr. Singleton]:    It would not have changed my—my plan. It would have been the same.

When asked if he had personally reviewed the MRIs, Dr. Singleton testified that he could not recall because it happened four years prior. However, Dr. Singleton also testified that he reviewed Parra's imaging studies. Additionally, the medical records, which were admitted into evidence, state, "I reviewed the MRI myself. C6-C7 focal 1.5 mm posterior central disc protrusion with disc herniation." The medical records then concluded: "After reviewing clinical exams as well as diagnostic studies, I think the patient's injury was a result of the motor vehicle collision. Moreover, the patient did not have neck pain or lower back pain prior to the incident and was in good health."

Parra also testified at trial. She claimed that she was showing her two-year old child in the backseat a video on her phone when Jefferson crashed into her. When Jefferson's vehicle collided with Parra's vehicle, the phone struck Parra on the cheek. Jefferson cross-examined Parra concerning her testimony:

[Question]:         Ma'am, today I just asked you just not 5 minutes ago, and you said that you did—your—your phone didn't hit you. And it didn't—it had nothing to do with you being hurt in the accident. So are you now changing what you said as far as the mechanism of how you were hurt in the accident?

[Parra]:            No.

| | |
|---|---|
| [Question]: | You're not saying you said two different things in the last 5 minutes? |
| [Parra]: | You're asking too many questions. It's confusing me. I'm— |
| [Question]: | Confusing you? |
| [Parra]: | Yes. Because you're just asking it one way, another way and— |
| [Question]: | Well, that— |
| [Parra]: | —rephrasing it— |
| [Question]: | Ma'am— |
| [Parra]: | So I'm getting confused, and I'm saying things that I—that you're phrasing it differently, so— |
| [Question]: | Ma'am, have you ever heard if you—if you—if you're telling the truth, you don't got to worry about a bad memory. |
| [Parra's Attorney]: | Objection, Your Honor. |
| [Trial Court]: | Sustained. |

Jefferson next challenged Parra about a previous accident from 2011 and her failure to mention that accident in her patient history when she visited the chiropractor. When Parra filled out the chiropractor's form, Parra answered "no" to the question, "[h]ave you had similar accidents or injuries before." Parra claimed that it was a "careless mistake" she made while filling out the form; furthermore, she asserted that she verbally disclosed the previous accident.

Concerning the 2011 accident, Parra testified that she had injured her lower back. Parra sought treatment from a chiropractor for her back; she testified that she fully recovered from the pain after six months. Parra admitted that she did not go

6

to the same chiropractor to treat the pain from the accident with Jefferson.

Jefferson also briefly questioned Parra concerning damage that occurred to Parra's vehicle six weeks prior to the accident with Jefferson:

> [Question]:      Okay. Well, this one, did it cause any misalignment to your back of your vehicle when you got hit there?
>
> [Parra]:      No.
>
> [Question]:      Didn't. Okay. And that was, what, about six weeks before this one?
>
> [Parra]:      Yes.
>
> [Question]:      Okay. So the back of your car got tore up six weeks before this accident?
>
> [Parra]:      Just that—
>
> [Question]:      At least on the right side? Okay.
>
> [Parra]:      Just the right—
>
> [Question]:      Just the right? Okay.

The damage to her vehicle that occurred six weeks prior to the collision between Parra and Jefferson was never mentioned again at trial.

The jury found that Jefferson was negligent and that her negligence proximately caused the wreck. Question 2 of the jury charge then stated:

> What sum of money, if paid now in cash, would fairly and reasonably compensate SONIA PARRA for her injuries, if any, that resulted from the occurrence in question?
>
> . . .
>
> Do not include any amount for any condition existing before the

occurrence in question, except to the extent, if any, that such other condition was aggravated by any injuries that resulted from the occurrence in question.

The jury awarded zero damages in all three categories: medical care expenses, physical pain sustained in the past, and physical impairment sustained in the past.

On March 31, 2020, Parra filed a motion for JNOV. In her motion, Parra argued that her claims for damages were supported by affidavits in compliance with Texas Civil Practice and Remedies Code § 18.001(b)–(c) in addition to her testimony and the testimony of Dr. Singleton at trial. *See* Tex. Civ. Prac. & Rem. Code Ann. § 18.001(b)–(c).[1] Additionally, Parra asserted that Jefferson did not controvert any of Parra's claims as to medical expenses at trial. Accordingly, Parra sought to have the trial court enter a judgment awarding her $25,740 in medical expenses incurred in the past. Jefferson filed a motion to enter a judgment in accordance with the jury verdict.

On April 20, 2020, the trial court granted Parra's motion and entered a JNOV awarding Parra $25,740 for past medical expenses. Jefferson filed a timely appeal.

## II.    ANALYSIS

In a single issue, Jefferson argues that the trial court erred in granting Parra's motion for JNOV.

---

[1] Section 18.001(b) provides: "Unless a controverting affidavit is served as provided by this section, an affidavit that the amount a person charged for a service was reasonable at the time and place that the service was provided and that the service was necessary is sufficient evidence to support a finding of fact by judge or jury that the amount charged was reasonable or that the service was necessary." Tex. Civ. Prac. & Rem. Code Ann. § 18.001(b).

8

## A.    STANDARD OF REVIEW

We review the propriety of a trial court's grant of JNOV under a legal sufficiency standard. *Tanner v. Nationwide Mut. Fire Ins.*, 289 S.W.3d 828, 830 (Tex. 2009); *Collins v. D.R. Horton-Tex. Ltd.*, 574 S.W.3d 39, 46 (Tex. App.— Houston [14th Dist.] 2018, pet. denied). When examining a legal sufficiency challenge, we review the evidence in the light most favorable to the disregarded jury finding and indulge every reasonable inference that would support it. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005); *Envtl. Procs., Inc. v. Guidry*, 282 S.W.3d 602, 629 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). We credit favorable evidence if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not. *Tanner*, 289 S.W.3d at 830. We uphold the jury's finding if more than a scintilla of competent evidence supports it. *Id.*

Generally, the evidence is legally insufficient to support a finding and a JNOV must be granted when the record demonstrates: (1) the complete absence of evidence on a vital fact; (2) a rule of law or evidence precluded according weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact amounted to no more than a scintilla; or (4) the evidence conclusively established the opposite of a vital fact. *See City of Keller*, 168 S.W.3d. at 810–11; *see also Advanced Gas & Equip., Inc. v. Airgas USA, LLC*, No. 14-16-00464-CV, 2017 WL 3442430, at *3 (Tex. App.—Houston [14th Dist.] Aug. 10, 2017, pet. denied) (mem. op.). The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller*, 168 S.W.3d at 827. We review de novo a trial court's ruling on a motion for JNOV. *Abel v. Alexander Oil Co.*, 474 S.W.3d 795, 799 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

A party with the burden of proof at trial is entitled to a JNOV on a particular issue only if the evidence establishes that issue in their favor as a matter of law. *See Henry v. Masson*, 333 S.W.3d 825, 849 (Tex. App.—Houston [1st Dist.] 2010, no pet.). To be entitled to a JNOV, Parra had the burden to prove her damages as a matter of law. *See Int'l Bus. Machines Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 234–35 (Tex. 2019); *Tanner*, 289 S.W.3d at 830; *Paz v. Molina*, No. 14-11-00664-CV, 2012 WL 2466578, at *2 (Tex. App.—Houston [14th Dist.] June 28, 2012, no pet.) (mem. op.); *see also Gunn v. McCoy*, 489 S.W.3d 75, 101 (Tex. App.—Houston [14th Dist.] 2016), *aff'd*, 554 S.W.3d 645 (Tex. 2018) ("A plaintiff may prove that medical expenses were reasonable and necessary either by presenting expert testimony, or by submitting affidavits compliant with section 18.001.").

In conducting this analysis, we separate the fact of injury or damages from the amount of damages; stated differently, "we must distinguish 'uncertainty as to the fact of damages' from 'uncertainty merely as to the amount of damages.'" *Lufkin Indus.*, 573 S.W.3d at 235 (quoting *McKnight v. Hill & Hill Exterminators, Inc.*, 689 S.W.2d 206, 207 (Tex. 1985)). "Uncertainty as to the fact of legal damages is fatal to recovery, but uncertainty as to the amount will not defeat recovery." *McKnight*, 689 S.W.2d at 207 (citing *Sw. Battery Corp. v. Owen*, 131 Tex. 423, 115 S.W.2d 1097, 1099 (1938)); *Allstate Ins. v. Rehab All. of Tex., Inc.*, No. 14-13-00459-CV, 2015 WL 1843249, at *7 (Tex. App.—Houston [14th Dist.] Apr. 21, 2015, pet. denied) (mem. op.); *see also Sw. Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 721 (Tex. 2016) ("[A]n overstatement of damages does not entirely defeat recovery when there is legally sufficient evidence that damages exist.").

## B.     APPLICABLE LAW

Establishing causation in a personal injury case requires a plaintiff to "prove that the conduct of the defendant caused an event and that this event caused the plaintiff to suffer compensable injuries." *JLG Trucking, LLC v. Garza*, 466 S.W.3d 157, 162 (Tex. 2015) (quoting *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995)). Thus, "when an accident victim seeks to recover medical expenses, she must show both 'what all the conditions were' that generated the expenses and 'that all the conditions were caused by the accident.'" *Garza*, 466 S.W.3d at 162 (quoting *Guevara v. Ferrer*, 247 S.W.3d 662, 669 (Tex. 2007)).

Expert testimony is generally necessary to establish causation of medical conditions that are "outside the common knowledge and experience of jurors." *See Guevara*, 247 S.W.3d at 665. In some cases, however, lay testimony may support a causation finding that links an event with a person's physical condition. *Id.* at 665-66. "This exception applies only in those cases in which general experience and common sense enable a layperson to determine the causal relationship with reasonable probability." *Kelley v. Aldine Indep. Sch. Dist.*, No. 14-15-00899-CV, 2017 WL 421980, at \*2 (Tex. App.—Houston [14th Dist.] Jan. 31, 2017, pet. denied) (mem. op.) (citing *Guevara*, 247 S.W.3d at 666; *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 733 (Tex. 1984)). In such cases, "lay testimony establishing a sequence of events which provides a strong, logically traceable connection between the event and the condition is sufficient proof of causation." *Hills v. Donis*, No. 14-18-00566-CV, 2021 WL 507306, at \*3–4 (Tex. App.—Houston [14th Dist.] Feb. 11, 2021, pet. denied) (mem. op.) (quoting *Morgan*, 675 S.W.2d at 733).

## C.     APPLICATION

Jefferson argues that the trial court erred by granting Parra's motion for

JNOV for several reasons. Jefferson first argues that Parra's testimony does not conclusively establish causation. Jefferson points to authority from our court for the proposition that lay testimony alone cannot establish causation for the types of injuries that Parra suffered. *See Hills*, 2021 WL 507306, at *4.

We are not persuaded by this argument. *Hills* is distinguishable because Parra did not attempt to rely on her testimony alone to establish causation; her testimony was supported by the expert testimony of Dr. Singleton, who testified concerning his observations, the MRI results, and the acute nature of the injury Parra suffered. Dr. Singleton further testified that, within reasonable medical probability, the collision with Jefferson was the source of Parra's injuries. *See City of Keller*, 168 S.W.3d at 827.

In a similar argument, Jefferson claims that Parra's medical affidavits did not establish causation. Jefferson again relies on *Hill* for the proposition that uncontroverted medical affidavits do not establish causation. *See Hills*, 2021 WL 507306, at *4. It is true that in *Hills*, we concluded that "Section 18.001 affidavits do not establish the requisite causal link between the occurrence and the plaintiff's medical expenses." *Id.*; *see* Tex. Civ. Prac. & Rem. Code Ann. § 18.001(b) ("The affidavit is not evidence of and does not support a finding of the causation element of the cause of action that is the basis for the civil action."). However, Parra did not rely on her medical affidavits to prove causation. Instead, her own testimony, the MRI results, and Dr. Singleton's testimony combined established causation. Dr. Singleton specified that Parra was asymptomatic prior to the collision with Jefferson, and he testified with reasonable medical probability that all of Parra's injuries were caused by the collision with Jefferson.

Jefferson did not present any experts to controvert Dr. Singleton's testimony concerning causation. During closing argument, Jefferson asserted that Parra's

12

conflicting testimony about the phone and how her injuries occurred and her failure to mention her previous accident in the medical history form destroyed her credibility. But Jefferson offered no evidence to controvert the MRI results or Dr. Singleton's testimony that Parra's injuries were acute and caused by the collision with Jefferson. No testimony was adduced regarding any prior neck injury of Parra. And although Jefferson argues on appeal that Dr. Singleton did not read Parra's MRI records and that he relied only on what Parra told him, the record clearly indicates that he reviewed Parra's MRI records, and that he based his opinion on what Parra told him, the findings in the MRI reports, and the objective findings from his physical examinations of Parra. Thus, based on the evidence presented by Parra and the lack of controverting evidence presented by Jefferson, we conclude that Parra presented conclusive evidence of causation. *See City of Keller*, 168 S.W.3d at 827.

Concerning damages, Jefferson argues that Dr. Singleton's testimony does not conclusively establish the amount of Parra's medical expenses. In her appellate brief, while Parra asserts that she "never claimed the affidavits were conclusive proof [that the medical expenses were reasonable and necessary] by themselves," she also argues "Dr. Singleton's testimony and Parra's medical records proved her injuries were caused by the collision at issue while the Section 18.001 medical affidavits proved that Parra's medical treatment was necessary and that the cost of said treatments was reasonable." In addition to the testimony regarding the accident, the jury heard testimony regarding damage to Parra's car which occurred approximately six weeks before the accident with Jefferson, and testimony regarding a prior back injury Parra had sustained during a car accident in 2011. Although the jury could have disbelieved that Parra was entitled to the full amount of damages requested, the affidavits—combined with Dr. Singleton's expert

13

testimony—established that Parra was entitled to at least some damages.

The dissent argues that our court has "routinely upheld a zero-damages award after a jury finds liability in car wreck cases." However, the dissent also acknowledges that each of those cases is "different on the facts." For example, in *Paz v. Molina*, No. 14-11-00664-CV, 2012 WL 2466578, at *4–5 (Tex. App.—Houston [14th Dist.] June 28, 2012, no pet.) (mem. op.), our court reversed a JNOV awarding medical bills after the jury had awarded zero damages for medical bills but some damages for pain and impairment. But in *Paz*, neither party presented medical expert testimony. *See id.* at *4. Furthermore, plaintiff's injuries were "highly subjective and unable to be corroborated by medical testing." *Id.* at *2. We observed that while the MRI results showed a spinal disc protrusion, "no expert testimony was presented to explain this medical finding, and [plaintiff] testified that she did not know if the MRI results revealed a condition that existed before the accident or not." *Id.* at *4. There was no medical expert to causally link the injury to the accident. Here, Parra presented expert medical testimony that linked Parra's injury to the accident with Jefferson. Singleton also testified that Parra's subjective injuries were corroborated by the MRI results and physical examinations.

Another case from our court that the dissent highlights is *Walker v. Scopel*, No. 14-14-00411-CV, 2016 WL 552197, at *4–5 (Tex. App.—Houston [14th Dist.] Feb. 11, 2016, no pet.) (mem. op.), in which we upheld a zero-damages award despite the plaintiff's presentation of doctor's testimony and MRI results. However, the doctor in *Scopel* testified that he could not tell if the plaintiff's injuries were from the incident that was the subject of the suit or from a prior, unrelated accident. *Id.* at *2. We also noted that the doctor's testimony was based purely on the plaintiff's subjective reports of pain, which she had been

14

experiencing since the first accident. *Id.* at *4. In contrast, Parra testified that she had fully recovered from her prior accident in 2011. In the years preceding the accident with Jefferson, Parra testified that she did not complain of any injuries in her neck or back, and there was no evidence controverting this testimony. Here, Dr. Singleton specifically testified that based on the acute nature of Parra's injuries, her injuries were not caused by a prior accident but caused by the accident with Jefferson. And Dr. Singleton testified that the MRI results and the results of the physical examinations corresponded to Parra's subjective complaints of pain.

Unlike *Paz* and *Scopel*, Parra presented both MRI results and medical expert testimony that causally connected the accident with Jefferson to Parra's injuries. The jury cannot simply award zero damages when there is undisputed evidence of injury, even if the injury is relatively minor. *See Szmalec v. Madro*, 650 S.W.2d 514, 517 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.). As we have previously concluded: "when there are substantially undisputed objective symptoms of injury, a jury cannot ignore the undisputed facts and arbitrarily deny any recovery." *Id.*

When the evidence is legally sufficient to support some damages, a JNOV is improper; instead, courts of appeal can either determine an appropriate remittitur, where possible, or remand for a new trial, which is appropriate here. *See Guevara*, 247 S.W.3d at 670; *Garza v. Cantu*, 431 S.W.3d 96, 109 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (reversing and remanding for new trial when there was legally sufficient evidence of at least some damages); *see also Bright v. Simpson*, No. 11-17-00104-CV, 2019 WL 1941885, at *4 (Tex. App.—Eastland Apr. 30, 2019, no pet.) ("The normal course of action for us to take when we find that evidence is legally insufficient would be to render judgment, but here, there is sufficient competent evidence to support at least some damages. We believe that

15

the proper course of action under this record would be to reverse the judgment of the trial court and remand for a new trial.").[2]

### III. PARRA'S REQUEST FOR RELIEF

Parra asks us to determine that Jefferson's appeal is frivolous and to award Parra damages accordingly. According to Parra, Jefferson's appeal is frivolous because she failed to comply with appellate procedural requirements by failing to cite to the record.

Generally, "an appellee in the court of appeals who has not filed a notice of appeal may not seek to alter the trial court's judgment in a way that would award the appellee more relief than the trial court granted the appellee in its judgment." *Frontier Logistics, L.P. v. Nat'l Prop. Holdings, L.P.*, 417 S.W.3d 656, 666 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). Although Parra did not file a notice of appeal, the particular relief she requests is still within our power:

> If the court of appeals determines that an appeal is frivolous, it may— on motion of any party or on its own initiative, after notice and a reasonable opportunity for response—award each prevailing party just damages. In determining whether to award damages, the court must not consider any matter that does not appear in the record, briefs, or other papers filed in the court of appeals.

Tex. R. App. P. 45; *see Glassman v. Goodfriend*, 522 S.W.3d 669, 673 (Tex.

---

[2] As stated above, we review JNOVs for legal sufficiency. *See Tanner*, 289 S.W.3d at 830. The question is whether Parra demonstrated her right to recovery of $25,740 as a matter of law. *See id.* We have concluded that while the evidence was not legally sufficient for her to recover the full $25,740, there was evidence offered at trial to support recovery greater than $0. As we quoted above: "when there are substantially undisputed objective symptoms of injury, a jury cannot ignore the undisputed facts and arbitrarily deny any recovery." *Szmalec*, 650 S.W.2d at 517. The Texas Supreme Court and our own Court, have concluded that in such a case — where there is not legally sufficient evidence to support the full amount award in the JNOV but there is evidence to support some amount of damages—it is appropriate to remand for a new trial. *See Guevara*, 247 S.W.3d at 670; *Garza*, 431 S.W.3d at 109; *see also Bright*, 2019 WL 1941885, at *4.

16

App.—Houston [14th Dist.] 2017, pet. denied) (determining that an appeal was frivolous and awarding damages when the appellee did not file her own notice of appeal).

"To determine whether an appeal is objectively frivolous, we review the record from the viewpoint of the advocate and decide whether the advocate had reasonable grounds to believe the case could be reversed." *Id.* While Jefferson failed to appropriately cite to the record, we cannot conclude that Jefferson had no reasonable ground to believe the case could be reversed, and not only because all of the justices on this panel agreed to reverse it in some fashion. *See id. See Chapman v. Hootman*, 999 S.W.2d 118, 124 (Tex. App.—Houston [14th Dist.] 1999, no pet.) ("Although imposing sanctions is within our discretion, we will do so only in circumstances that are truly egregious."); *Glassman*, 522 S.W.3d at 674 (concluding that the appeal was frivolous because the appellant had "no excuse for repeating a collateral attack that already has been found to be frivolous and for which she has been monetarily sanctioned before"). Therefore, we decline to award Parra damages in relation to a frivolous appeal.

## IV. CONCLUSION

We reverse the trial court's JNOV, remand for a new trial, and deny Parra's request for sanctions.

/s/     Margaret "Meg" Poissant
Justice

Panel consists of Chief Justice Christopher and Justices Hassan and Poissant (Christopher, C.J., dissenting).

17